NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DISTRICT 65 PENSION PLAN by its Trustees, LARRY MAGARIK and WILLARD ECCLESTON,<br><br>  Plaintiff,<br><br>  v.<br><br>AGH Trimsource, INC., *et al.*,<br><br>  Defendants. | Civil Action No. 23-01917 (GC) (RLS)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

　　**THIS MATTER** comes before the Court on Plaintiff District 65 Pension Plan's[1] Motion for Default Judgment (ECF No. 6) against Defendant AGH Trimsource, Inc., under Federal Rule of Civil Procedure ("Rule") 55(b).  AGH Trimsource was served on April 27, 2023 and has not responded or otherwise appeared in this case. (ECF No. 4.)  The Court has reviewed Plaintiff's submissions and decides the motion without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, Plaintiff's Motion is **GRANTED**.

---

[1]　　Plaintiff in this case is the District 65 Pension Plan (the "Plan"), with this action brought by its Trustees Larry Magarik and Willard Eccleston on behalf of the Plan and participants in and beneficiaries of the Plan.

## I. BACKGROUND

### A. Factual Allegations

The Plan is a multiemployer employee pension benefit plan administered in the District of New Jersey at 830 Bear Tavern Road, West Trenton, New Jersey. (ECF No. 1 ¶¶ 1, 6, 8.) The Plan is administered by a Board of Trustees comprised of representatives from labor and management. (*Id.* ¶ 7.) AGH Trimsource is an "employer engaged in an industry affecting commerce"[2] located at 252 West 37th Street, New York, New York. (*Id.* ¶ 11.)[3]

AGH Trimsource had an obligation to pay into the Plan until in or around 1996. (*Id.* ¶ 14.) AGH Trimsource effected a complete withdrawal from the Plan within the meaning of ERISA § 4203(a), 29 U.S.C. §1383(a). (*Id.*) Following this withdrawal, AGH Trimsource was obligated under 29 U.S.C. § 1381 to make payments to the Plan.[4] (*Id.*) On September 20, 1996, the parties reached a settlement agreement ("Settlement Agreement"), in which AGH Trimsource agreed to make quarterly payments of $14,472.00 to discharge its withdrawal liability. (*Id.* ¶ 15; ECF No. 1-1.) Under the Settlement Agreement, in the case of late or delinquent payments, AGH

---

[2] This is defined by the Labor-Management Relations Act § 301(a), 29 U.S.C. §185(a), and Sections 3(5), (11) and (12) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1002(5), (11) and (12). Based on review of public records, AGH Trimsource appears to produce zippers and related products.

[3] Defendants Does 1 through 10 are, upon Plaintiff's information and belief, "related employers within the meaning of Subsections (b), (c), (m), (n) or (o) of Section 414 of the Internal Revenue Code of 1986, 26 U.S.C. §414(b), (c), (m), (n) or (o)." (ECF No. 1 ¶ 12.) While the complaint was filed against Does 1 through 10 alongside AFG Trimsource, this motion for default judgment is only directed at AGH Trimsource.

[4] "If an employer withdraws from a multiemployer plan in a complete withdrawal . . . then the employer is liable to the plan in the amount determined . . . to be the withdrawal liability." 29 U.S.C.A. § 1381. The withdrawal liability is "the employer's proportionate share of the plan's 'unfunded vested benefits,' calculated as the difference between the present value of vested benefits and the current value of the plan's assets." *Teamsters Pension Tr. Fund of Phila. & Vicinity v. Domenic Cristinzio, Inc.*, 994 F. Supp. 617, 621 (E.D. Pa. 1998).

Trimsource was to be "charged interest on the overdue amount at the rate of 1% per month, or part of a month." (ECF No. 1-1 at 27.) If AGH Trimsource did not cure any deficiencies within 60 calendar days "of the Plan sending written notice from the Plan of its delinquency, [AGH Trimsource's] payment obligations . . . become immediately due and owing." (*Id.*)

In or around 2009, AGH Trimsource notified the Plan that it could not meet its obligations. (*Id.* ¶ 16.) The Plan agreed to modify the payment plan, and on March 15, 2009, AGH Trimsource and the Plan entered into their first hardship settlement ("First Hardship Agreement"). (*Id.* ¶ 17; ECF No. 1-2.) After AGH Trimsource still could not make the agreed-upon payments, the parties entered a second hardship agreement, and later a third and fourth agreement. (ECF Nos. 1-3 to 1-5; ECF No 1 ¶¶ 18-23.) On December 15, 2017, the parties entered into the Fifth Hardship Agreement. (ECF No. 1 ¶¶ 24-25.) The Fifth Hardship Agreement stipulated this would be the final hardship settlement agreement, and that AGH Trimsource would satisfy its remaining liability to the Plan with a payment of $60,000 over six years. (ECF No. 1 ¶ 25; ECF No. 1-6 at 4.)

AGH Trimsource made only three payments before defaulting under the Fifth Hardship Agreement. (ECF No. 1 ¶ 26.) In February 2021, the Plan sued AGH Trimsource for the unpaid withdrawal liability.[5] (Id. ¶ 27.) The parties settled the case by amending the Fifth Hardship Agreement. (ECF No. 1 ¶¶ 28-29; ECF No. 1-7.) The Amended Fifth Hardship Agreement modified the payment schedule from biannual to triannual payments, payable in June, September, and December of each year from 2021 through 2023. The amendment added four $5,000.00 payments for the missed payments and $5,850.00 for interest on those missed payments. (ECF No. 1 ¶ 28; ECF No. 1-7 at 4.) According to the amended agreement, AGH Trimsource "intend[ed]

---

[5] *District 65 Pension Plan, et. al. v. AGH Trimsource, Inc., et. al.*, Case No. 3:21-cv-02292 was filed in the District of New Jersey on February 10, 2021. (*Id.* ¶ 27.)

to pay the interest charge by adding $650.00 to each of the remaining settlement payments, however the parties agree that the deadline for the entire $5,850.00 interest charge is December 31, 2023." (ECF No. 1-7 at 4.)

AGH Trimsource made two of the first three 2021 payments late, incurring new interest charges. Thus, even though the two payments included additional amounts for lateness, those amounts applied toward the new interest charges, not the $5,850.00 interest charge. (ECF No. 1 ¶ 30.) AGH Trimsource made the first two 2022 payments late, incurring more interest charges but paying no additional amounts. (Id. ¶¶ 31-33.) After that, AGH Trimsource made no more payments, despite receiving notice of the delinquencies. (Id. ¶ 34.)

Plaintiff alleges that as of June 30, 2023, the Defendant's remaining liability is $26,600.00. (ECF No. 6-1 ¶ 16; ECF No. 6-2.) Plaintiff brings this action under Sections 502(g) and 4301(b) of ERISA, 29 U.S.C. §§1132(g) and 1451(b) for the outstanding balance of AGH Trimsource's withdrawal liability, ongoing interest, an amount equal to the "greater of interest on the unpaid liability or liquidated damages of 20% of the amounts due," and costs and attorney's fees.[6] (ECF No. 1 ¶ 37.)

### B.  Procedural History

On April 5, 2023, Plaintiff filed its complaint against Defendants. (ECF No. 1.) On April 27, Defendant served AGH Trimsource. (ECF No. 4.) On May 26, the Clerk of Court entered default against AGH Trimsource. (ECF No. 5.) On June 6, Plaintiff moved for default judgment

---

[6] Under ERISA § 1132, "if a judgment in favor of the plan is awarded" in a civil enforcement action, "the court shall award the plan -- (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of -- (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20% . . .or the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs of the action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(A) to (D).

against AGH Trimsource.  (ECF No. 6.)  To date, AGH Trimsource has not responded or otherwise appeared in this action.

## II.     LEGAL STANDARD

Under Rule 55(a), a plaintiff may request that the clerk of court enter default as to "a party against whom a judgment for affirmative relief is sought [who] has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a).  Once a default has been entered, the plaintiff may then seek the entry of a default judgment — either by the clerk or the court itself — under Rule 55(b).  Fed. R. Civ. P. 55(b).

A party is not entitled to a default judgment as of right; "the entry of such a judgment is left primarily to the discretion of the district court." *DirecTV, Inc. v. Asher*, Civ. No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984)).  Because default judgments prevent the resolution of claims on their merits, the court "does not favor entry of defaults and default judgments." *United States v. Thompson*, Civ. No. 16-0857, 2017 WL 3634096, at *1 (D.N.J. July 20, 2017) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

Following an entry of default, "[a] defendant is deemed to have admitted the factual allegations of the Complaint . . . except those factual allegations related to the amount of damages." *DirecTV*, 2006 WL 680533, at *1 (citation omitted).  Still, "[t]he Court need not accept the moving party's legal conclusions, because [e]ven after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Id.* (citation and internal quotation marks omitted).

In entering default judgment, a court must determine whether (1) it has personal and subject matter jurisdiction, (2) the defendant was properly served, (3) the complaint sufficiently pleads a

cause of action; and (4) the plaintiff has proven damages. *Days Inns Worldwide, Inc. v. T.J. LLC*, Civ. No. 16-8193, 2017 WL 935443, at *2 (D.N.J. Mar. 9, 2017) (citing *Days Inns Worldwide, Inc. v. Jinisha Inc.*, Civ. No. 14-6794, 2015 WL 4508413, at *1 (D.N.J. July 24, 2015)). In addition, the court must evaluate three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. New Jersey Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)); *see also Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (same). If these factors weigh in favor of the moving party, the court may grant default judgment.

### III. DISCUSSION

#### A. Jurisdiction and Service

As a threshold matter, this Court determines that it has subject matter and personal jurisdiction over AGH Trimsource. This action is being brought against Defendants under ERISA §§ 1132(e) and 1451(a)(1), (b) and (c). Under 29 U.S.C. § 1132, "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter[.]" 29 U.S.C. § 1132(e)(1). This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331. (ECF No. 1 ¶ 3.)[7] The Court has personal jurisdiction over the Defendant because it was properly served. (ECF No. 4.) In an action under ERISA § 1332, "process may be served in any [] district where a defendant resides or may be found." 29 U.S.C. § 1132 (e)(2). Under Rule 4(e), service of process upon an individual may be effected by "delivering a copy of the summons and of the complaint to the individual personally[.]" Fed. R. Civ. P. 4(e)(2)(A). Under Rule 4(h), a corporation may be

---

[7] Venue is also proper as the Plan is administered in the District of New Jersey. 29 U.S.C. § 1132 (e)(2) ("Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered.")

served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[.]" Fed. R. Civ. P. 4(h)(1)(B). Here, Plaintiff filed proof of service as to AGH Trimsource's owner David German, an officer of the company. (ECF No. 4.)

### B. Legitimate Cause of Action

Plaintiff seeks to hold AGH Trimsource liable for unpaid withdrawal liability, interest, liquidated damages, attorney's fees, and related costs for violations of 29 U.S.C. § 1132(g)(2)(A) to (D) and the Settlement Agreement. (ECF No. 1 at ¶ 36). Section 1132(g) provides a civil cause of action for ERISA violations, including for delinquent contributions as defined by 29 U.S.C. § 1145. *See* 29 U.S.C. § 1132(g) ("Every employer who is obligated . . . shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement."). Under 29 U.S.C. § 1451(b), "any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution." Plaintiff alleges that AGH Trimsource has not met its obligations to pay its remaining withdrawal liability and related interest owed — taking all facts as stated in the complaint as true, the Court finds that Plaintiff has alleged a sufficient cause of action under ERISA §§1132(g) and 1451(b).

In addition, Plaintiff has submitted seven settlement agreements between the parties made between 1996 and 2021 showing that AGH Trimsource agreed repeatedly to discharge the alleged obligations. These agreements positively factor into the Court's analysis of this action's legitimacy.

### C. Appropriateness of Default Judgment

Because the Plan has established a legitimate cause of action, the Court must "make explicit factual findings" as to (1) "whether the party subject to default has a meritorious defense," (2) "the

prejudice suffered by the party seeking default," and (3) "the culpability of the party subject to default." *Doug Brady, Inc.*, 250 F.R.D. at 177 (citation omitted).

First, the Court must find "whether the party subject to default has a meritorious defense." *Id.* "When a defendant fails to appear, a court may find it has 'failed to raise any defenses for the Court's consideration.'" *Bd. of Trs of CWA/ITU Negotiated Pension Plan v. Am. Plus Printers, Inc.*, Civ. No. 19-12794, 2020 WL 2794342, at *4 (D.N.J. May 29, 2020) (citation omitted); *see also United States v. Vo*, Civ. No. 15-6327, 2016 WL 475313, at *3 (D.N.J. Feb. 8, 2016) ("[T]he Court cannot consider [d]efendant's defenses if any exist because [d]efendant failed to respond to this action."). AGH Trimsource has not appeared in this case, so the Court cannot consider any defenses it may have otherwise raised. Further, in seven settlement agreements, AGH Trimsource acknowledges its responsibility to pay the outstanding withdrawal liability. (ECF Nos. 1-1 to 1-7.) The Court finds that this factor weighs in favor of granting default judgment.

Second, the Court must "make explicit factual findings as to . . . the prejudice suffered by the party seeking default." *Doug Brady, Inc.*, 250 F.R.D. at 177 (citation omitted); *see also Chamberlain*, 210 F.3d at 164 (the Court must consider "prejudice to the plaintiff if default is denied") (citation omitted). Here, Plaintiff "suffers prejudice if it [does not] receive a default judgment because it has no alternative means of vindicating its claim against the defaulting parties." *G & G Closed Cir. Events, LLC v. Remsen Assocs., Inc.,* Civ. No. 19-13019, 2021 WL 1139873, at *4 (D.N.J. Mar. 24, 2021) (*quoting Joe Hand Promotions, Inc. v. Waldron,* Civ. No. 11-849, 2013 WL 1007398, at *4 (D.N.J. Mar. 13, 2013)). "Moreover, [the Employer's] failure to proceed with representation [ ] or otherwise defend the action prejudices Plaintiff as it prevents Plaintiff from proceeding with this case and obtaining relief" *Trs. of IBEW Loc. 400 Pension Fund v. Four Directions, Inc.*, Civ. No. 22-152, 2023 WL 2245036, at *2 (D.N.J. Feb. 27, 2023))

8

(internal citation omitted).  The Court finds that this factor weighs in favor of granting default judgment.

Finally, the Court must determine "the culpability of the party subject to default."  *Doug Brady, Inc.*, 250 F.R.D. at 177 (citation omitted).  The Court can draw an inference of culpability on the part of Defendants who fail to respond.  *See Trs of IBEW*, 2023 WL 2245036, at *2; *see also J & J Sports Prods., Inc. v. Tribiri-Tabara, LLC*, Civ. No. 18-13867, 2019 WL 2754955, at *3 (D.N.J. July 2, 2019) ("When a defendant has failed to answer, move, or respond to a complaint, culpability is presumed.").  The Court, accordingly, finds that default judgment is appropriate.

**D.     Damages**

Plaintiff still must prove damages. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) ("A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." (citation and internal quotation marks omitted)). The Court need not accept allegations as to damages as true under Rule 55(b), *DirecTV*, 2006 WL 680533, at *1, and it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of its allegations if the Court finds evidentiary support to be lacking, *Thompson*, 2017 WL 3634096, at *1 (*citing Doe v. Simone*, Civ. No. 12-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013)).

Plaintiff filed a declaration from Attorney Jeremy E. Meyer as an exhibit to the Motion for Default Judgment.  (ECF No. 6-1.)  In the declaration, Meyer lists the outstanding attorney's fees and costs incurred in this action.  (ECF No. 6-1 ¶ 21.)  Meyer also calculates the liquidated damages to which Plaintiff is entitled (*id.* ¶ 20) and attaches his calculations for the accelerated balance of AGH Trimsource's remaining liability, updated as of June 30, 2023 (ECF No. 6-2). The Court is satisfied that Meyer's declaration, his accelerated balance calculations, and the copies

of the settlement agreements before the Court (ECF Nos. 1-1 to 1-7) sufficiently prove Plaintiff's damages. Therefore, the Court grants Plaintiff's Motion.

Judgment is entered in favor of Plaintiff and against Defendant in the amount of $35,297.25, comprised of the following:

1. $26,600.00 (the total accelerated balance schedule of liability as of June 30, 2023 (ECF No. 6-2)), pursuant to 29 U.S.C. § 1132(g)(2)(A) and (B);

2. $300.00 (the interest of one percent per month of the unpaid settlement payment that has accrued since June 30, 2023, pursuant to the Amended Fifth Hardship Agreement (ECF No. 6-1 ¶ 10)), pursuant to 29 U.S.C. § 1132(g)(2)(B);

3. $4,000.00 in liquidated damages (ECF No. 6-1 ¶ 20), pursuant to 29 U.S.C. § 1132(g)(2)(C); and

4. $4,397.25 in attorney's fees and costs (ECF No. 6-1 ¶ 21), pursuant to 29 U.S.C. § 1132(g)(2)(D).

## IV.  CONCLUSION

For the reasons set forth above, and other good cause shown, Plaintiff's Motion for Default Judgment (ECF No. 6) is **GRANTED**. An appropriate Order follows.

Dated: January 2, 2024

*Georgette Castner*
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE